

FILED
Apr 25 2024, 8:57 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Kenneth Kesler, M.D.,

*Appellant-Plaintiff,*

v.

Indiana University Health Care Associates, Inc., d/b/a/ Indiana University Health Physicians (IUHP),

*Appellee-Defendant.*

---

April 25, 2024

Court of Appeals Case No.
23A-PL-2111

Appeal from the
Marion Superior Court

The Honorable
Heather A. Welch, Judge

Trial Court Cause No.
49D01-2307-PL-27885

**Baker, Senior Judge.**

## Statement of the Case

[1] Kenneth Kesler, M.D. sought a declaratory judgment, seeking relief from the restraints contained in a noncompetition clause of the Employment Agreement he entered into with Indiana University Health Care Associates, Inc. d/b/a Indiana University Health Physicians (IUHP). IUHP responded by filing its answer, verified counterclaim for declaratory judgment, and a request for a temporary restraining order (TRO), preliminary injunction, and permanent injunction. After a hearing, the trial court issued its order granting IUHP's request for a preliminary injunction and enjoined Dr. Kesler from treating patients within the geographically restricted area provided in the noncompetition clause in his Employment Agreement. Dr. Kesler brings this interlocutory appeal from the court's order. Concluding that the court's order did not reflect consideration of all competing interests in support of the result reached, we reverse and remand.

## Facts and Procedural History

[2] Dr. Kesler is a board-certified thoracic surgeon who has developed a surgical procedure to remove complex germ cell cancer tumors in the chest area.

During his career, he has developed a group of around 156 referring physicians who are primarily medical oncologists not employed by IUHP.

[3] In 2014, Kesler entered into an Employment Agreement with IUHP, which took effect on January 1, 2015. The Employment Agreement contained a restrictive covenant not to compete for a period of two years after the termination of his employment with IUHP and within the defined geographical thirty-mile range.

[4] Dr. Kesler provided IUHP with written notice of his intent to terminate the Employment Agreement as of July 14, 2023. After that date, he was employed by Community Health Network at Community North Hospital, a hospital within the thirty-mile geographically restricted area. Within days of the termination of his employment with IUHP, Dr. Kesler filed a declaratory judgment action seeking relief from the restrictive covenant not to compete. IUHP responded by filing its answer, verified counterclaim for declaratory judgment, and a request for a TRO, preliminary injunction, and permanent injunction.

[5] The trial court held a hearing on IUHP's motion requesting a TRO and preliminary injunction. During the hearing, IUHP presented argument and relied on the verified pleadings and responses filed in the action. Among other things, IUHP argued "it's actually in the public interest to enforce—uh—the contracts between the parties in this way [by enforcing the non-competition clause]." Tr. Vol. II, p. 13. IUHP further claimed that "the suggestion that

there's harm to patients is really refuted by–uh—sort of by Dr. Kesler himself. Um—you know—subject to his non-solicitate [sic], he agrees that patients can and—we agree that patients can continue to treat with him if they choose—uh—to relocate their care." *Id.*

[6] Dr. Kesler offered exhibits and testimonial evidence. He testified about his education, experience, training, employment, and referral network. He agreed with the statement that there was no one at IUHP who performs the same surgical procedure he does on the complex germ cell tumors in the chest. Over ninety-five percent of his patients are new patients. Dr. Kesler's counsel argued that "there certainly is a strong public interest that Dr. Kesler be able to perform these surgeries. At this time, the only place Dr. Kesler has surgical procedures [sic]—perform these procedures is at Community Hospital." *Id.* at 28. IUHP responded that, "[w]e're not limiting whether patients can treat with Dr. Kesler. We are asking that the Court enforce the reasonable restrictive covenant on where Dr. Kesler may situate his practice—uh—going forward if he's providing the same medical services." *Id.* at 29.

[7] The trial court entered its order granting a preliminary injunction in favor of IUHP, and enjoined Dr. Kesler from treating patients within the restricted geographical area set out in the Employment Agreement.

# Discussion and Decision

## A.    Confusion Apparent in the Record

[8]    Before we address the dispositive issue in this appeal, we pause to note the confusion in the record as to what the appealed order really is.  The trial court's order setting a hearing says it is considering a "Motion For Temporary Restraining Order," but makes reference in the order to IUHP's "Motion for Temporary Restraining Order *and Preliminary Injunction*" and concludes by setting a "virtual hearing on the Motion for Temporary Restraining Order *and Preliminary Injunction*."  Appellant's App. Conf. Vol. II, p. 94 (emphasis added).  The record also shows that the parties believed they were attending a hearing solely addressing the request for a temporary restraining order.  *See* Tr. Vol. II, p. 6. ("We know that this is a TRO hearing, not the full preliminary injunction hearing.") p. 7 ("TRO is to preserve the status quo until the–the preliminary injunction hearing.").  The court announced at the beginning of the hearing that "We're here today on the Defendant's motion for a temporary restraining order."  *Id.* at 5.  And the final line of the trial court's order reads, "Either counsel may petition the Court to schedule a preliminary injunction hearing."  Appellant's App. Conf. Vol. II, p. 22.

[9]    However, immediately preceding that sentence, the trial court's appealed order says, "Based on the foregoing analysis, the Court hereby **GRANTS** IUHP's Motion for Temporary Restraining Order *and Preliminary Injunction*.  Until this controversy is resolved on the merits, Dr. Kesler is enjoined from violating the noncompete in the Employment Agreement and treating patients within the 30-

mile radius of his Employment Agreement." *Id.* (emphasis added). And in setting out the "STANDARDS FOR ISSUANCE OF A TRO AND PRELIMINARY INJUNCTION," the trial court's order mistakenly cites *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 803 (Ind. 2011), to set out the requirements for obtaining a TRO. *See id* at 15. *Freedom Fund*, however, sets out the requirements to obtain a preliminary injunction. 959 N.E.2d at 803. It is Indiana Trial Rule 65(B)(1) which governs the requirements for a temporary restraining order, namely, that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." Additionally, Trial Rule 65(D) establishes that the trial court's order granting a TRO shall include or be accompanied by findings under Trial Rule 52.

[10] And the record is blurred in yet another way. After setting out the court's assessment of the evidence under subheadings that follow the requirements for a preliminary injunction, the order also discusses the "**Bond Amount**" and finds that because "*no TRO* may issue without adequate security. . . . "security should be provided" under Trial Rule 65(C) (emphasis added). Trial Rule 65(C) states "No restraining order *or preliminary injunction* shall issue except upon the giving of security by the applicant." (emphasis added).

[11] We conclude that the trial court's order should be considered an order granting a preliminary injunction. The order says, "[u]ntil this controversy is resolved on the merits . . ." *Id.* at 22. Although, one could argue that "merits" refers to

a preliminary injunction hearing, where the likelihood of success on the merits would be considered, the parties argued, and the court issued findings on the requirements for a preliminary injunction. Additionally, under our case law, the court's issuance of a TRO is not reviewable on appeal, and is superseded anyway, by the apparent grant of the preliminary injunction. *See Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 203 (Ind. 2012) (entry of TRO is not appealable); *Vickery v. Ardagh Glass Inc.*, 85 N.E.3d 852, 857 (Ind. Ct. App. 2017) (claims arising from the grant of a TRO become moot when superseded by a preliminary or a permanent injunction), *trans. denied.*

## B. Issue

[12] The dispositive issue in this appeal is whether the issuance of the preliminary injunction was supported by the evidence and was proper. We conclude that it was not.

## C. Standard of Review

[13] "The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion." *Buffkin v. Glacier Group*, 997 N.E.2d 1, 9 (Ind. Ct. App. 2013). "When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon." *Id.* "When findings and conclusions thereon are made, we must determine if the trial court's findings support the judgment." *Id.* "We will reverse the trial court's judgment only when it is clearly erroneous."

*Id.* "Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them." *Id.* "A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Id.* "We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment." *Id.* "Also, the power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *Id.*

[14] "To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence the following: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction." *Id.* "If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion." *Id.*

## D. Not All Preliminary Injunction Requirements Met

[15] We next examine the record to determine whether there is evidence to support the trial court's findings and whether those findings support the trial court's conclusions. *See id.* Here, we are most concerned with the showing as to (3) the threatened injury to the movant outweighs the potential harm to the

nonmoving party from the granting of an injunction, and (4) the public interest would not be disserved by granting the requested injunction. Concluding that the trial court's order is not supported as to some of the findings leading to the ultimate conclusion that a preliminary injunction is warranted, we find the trial court erred.

## D.1. Trial Court's Findings And Evidentiary Support or Lack Thereof

[16] In its order, the court concluded, in pertinent part, as follows:

> C.     Balance of Harms and Public Interest
>
> 1.    Dr. Kesler asserts that a TRO in IUHP's favor would be contrary to the public interest because he has patients who are in need of surgical intervention to protect their health and lives, and the noncompete impairs patients' legitimate interest in selecting the physician of their choice. Opp., pp. 6-7.
>
> 2.    However, without an injunction, IUHP would lose the benefit of the non-compete agreement contained in the Employment Agreement, to which Dr. Kesler agreed. IUHP could also lose goodwill if Dr. Kesler is not enjoined from competing with IUHP.
>
> 3.    Dr. Kesler freely entered the Employment Agreement that contained this non-competition provision. Courts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties. *Trimble v. Ameritech Publ., Inc.*, 700 N.E.2d 1128, 1129 (Ind. 1998). The Indiana Supreme Court has "continue[d] to believe that "it is in the best interest of the public not to restrict unnecessarily persons' freedom of contract." This Court further notes there is not evidence of an unequal bargaining power between the parties at this

early stage of the case.

4. Dr. Kesler's potential harm appears to be that he will have to move his practice more than 30 miles away from IU Health University Hospital and IU Health Methodist Hospital. IUHP notes that Dr. Kesler himself pointed out that numerous Indiana hospitals are equipped with the resources Dr. Kesler needs for his practice. Memo., p. 15.

5. The Court acknowledges that, under the noncompete, Dr. Kesler could still provide treatment outside the Restricted Territory, and it is not uncommon for his patients to willingly travel to him for treatment.

6. The Court finds that the injuries to IUHP outweigh the harm to Dr. Kesler.

7. The Court further finds the best interest of the public would be served in enforcing the Employment Agreement, which appears to be a valid contract.

8. The Court further notes that Ind. Code § 25-22.5-5.5-2.5(b)—providing that a primary care physician and an employer may not enter into a noncompete agreement— would not apply to Dr. Kesler because, admittedly, he is not a primary care physician.

Appellant's App. Conf. Vol. II, pp. 11-12.

### D.2. The Parties' Arguments

[17] Dr. Kesler's counsel argued that there are no thoracic surgeons at IUHP performing the surgical procedure Dr. Kesler developed to remove complex germ cell cancer tumors in the chest area. Counsel further remarked that there were "20—some—uh patients on [Exhibit B] who are very sick—who need cancer surgery. And there certainly is a strong public interest that Dr. Kesler be able to perform these surgeries." Tr. Vol. II, p. 28. Dr. Kesler testified that

"the referring physicians have categorically said no, I want Dr. Kesler to care for my patient. Or the patients have done that." *Id.* at 22. And in his response to IUHP's request for a TRO, Dr. Kesler argued, "Physician non-competition agreements involve other considerations because it impairs '[t]he patients' legitimate interest in selecting the physician of their choice . . .'" Appellant's App. Conf. Vol. II, p. 91 (citing *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 727 (Ind. 2008)). He further asserted that "[t]he patient's confidence in selecting the physician of their choice" is an important consideration. *Id.* The *Krueger* decision specifically said, "the confidence of a patient in the physician is typically an important factor in the relationship that relocation would displace." 882 N.E.2d at 727.

[18] On the other hand, IUHP argued that it "has a protectible interest in maintaining goodwill with patients and its patient base, and the restrictive covenant provides a reasonable and necessary means to protect that interest." Appellee's Conf. Br. p. 11. It also argued that the restrictive covenant was a "crucial aspect" of the Employment Agreement and that "approximately 29% of Dr. Kesler's patients reside within the Restricted Territory." *Id.* At the hearing, IUHP argued that "it's actually in the public interest to enforce—uh— the contracts between the parties in this way." Tr. Vol. II, p. 13.

[19] IUHP further argued that "[a]vailable data on Dr. Kesler's patients confirms that Dr. Kesler has had 2270 unique patients from 2019 to present, and 17,371 encounters. This same data confirms that patients remain as patients for two years on average, across IU Health." Appellant's App. Conf. Vol. II, p. 80

(Counterclaim). IUHP defined its suggested monetary damages based on data that Dr. Kesler's "patients remain as patients for two years on average, across IU Health" and that the "total value of all those patients over the next two years would have been $2.8 Million." Appellee's Conf. Br. p. 21.

[20] As for the nature of Dr. Kesler's patients, however, he testified at the hearing that over ninety-five percent of his patients are new patients, not repeat patients. He also provided Exhibit B, which was a list of referral sources, or referring physicians, he developed relationships with prior to entering into the Employment Agreement. And he testified that "the vast majority of my referral prior to IU Health employment came from outside IU Health Physicians." Tr. Vol. II, p. 20. Exhibit C was identified as a list of patients referred to Dr. Kesler since his separation from IUHP and "none of them" are part of "the IUHP patient base." *Id.* at 22.

### D.3. Analysis

[21] As for the trial court's findings in this area, there is no dispute as to Findings Number 4, 5, and 8. Dr. Kesler could provide services outside the geographically limited area and his patients would travel to receive his services. And no one disputes that Dr. Kesler is not a primary care physician. We now address the findings which remain.

### D.3.a.   Public Interest—Contracts or Physician of Choice

[22]   We will address the trial court's Findings Number 1, 2, 3 and 7 together because they each pertain to the various positions about what is in the public's interest.

[23]   Despite Dr. Kesler's argument that the noncompete impairs patients' legitimate interest in selecting the physician of their choice, IUHP made no showing that the public interest would not be disserved by the entry of a preliminary injunction. In *Fumo v. Medical Group of Michigan City, Inc.*, 590 N.E.2d 1103, 1109 (Ind. Ct. App. 1992), we held that:

> the availability of the particular specialty practiced by the physician is a matter to be considered by the trial court in looking at the totality of the circumstances. Where a specialist offers services uniquely or sparsely available in a specified geographical area, an injunction may be unwarranted because the movant is unable to meet the burden of showing that the public would not be disserved.

And "[t]he effect of the injunction upon the public interest must be weighed with the relative potential harms to the parties." *Id.* at 1108.

[24]   Additionally, and perhaps more importantly, IUHP has not demonstrated that it has suffered any harm. Dr. Kesler's statement that none of the post-separation patients who were referred to him were members of IUHP's patient base is unrefuted. IUHP simply responded that 29 percent of the patients lived in the particular restricted area under the noncompetition clause. However, had Dr. Kesler moved his practice 30.01 miles from University Hospital and

Methodist Hospital, patients from that restricted area could have freely traveled to Dr. Kesler's new location at the same risk of suggested "harm" to IUHP. IUHP drafted and negotiated for that provision. Thus, IUHP anticipated the loss of future patients upon Dr. Kesler's departure had he moved his practice 30.01 miles from downtown Indianapolis and cannot now complain that the loss of those same patients constitutes present harm attributable to a geographic violation of the restrictive covenant.

[25] This leads us to the next point which is the unreasonableness or futility of the geographic restriction at issue here. Although this also pertains to IUHP's likelihood of success at trial on the merits, IUHP has not demonstrated that the geographic limitation here does not disserve the public while providing a benefit to IUHP. IUHP has no thoracic surgeons who perform the complex procedures Dr. Kesler performs. Therefore, the restriction does nothing more than prevent Dr. Kesler from exercising his specific skill set. The record here shows there simply are no thoracic surgeons at IUHP with whom Dr. Kesler is in direct competition.

[26] And as for goodwill considerations, IUHP has not made a showing that the complex procedures he performs involve trade secrets or confidential information. "Indeed, '[a]lthough an employer has a protectible property interest in the good will of his business (including secret or confidential information), the same is not true regarding the general knowledge, information or skills gained by the employee in the course of his employment.'" *Buffkin*, 997 N.E.2d at 11 (quoting *Brunner v. Hand Indus., Inc.*, 603 N.E.2d 157, 160 (Ind. Ct.

App. 1992)). Furthermore, "'[W]hile an employer, under a proper restrictive agreement, can prevent a former employee from using his trade or business secrets, and other confidential knowledge gained in the course of the employment, and from enticing away old customers, he has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment.'" *Id.* (quoting *Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 411, 127 N.E.2d 235, 241 (Ind. 1955)) (citation omitted).

[27] Here, the trial court's findings "do not reflect consideration of all competing interests or disclose the reasons for the result reached[]" regarding whether the public interest would be disserved by issuing the preliminary injunction. *Id.* Dr. Kesler provided unrefuted evidence that he was the only thoracic surgeon in the particular area who performed the surgical procedure he developed to remove complex germ cell cancer tumors in the chest area. IUHP responded by making an argument appropriate for the underlying matter, *viz.*, it is in the public interest not to restrict unnecessarily persons' freedom of contract.

[28] However, IUHP offered no evidence to show that the public would not be disserved in the particular area. More recently our supreme court found that a preliminary injunction would not disserve the public because the employer "provided qualified physicians to meet the needs of all patients who would have seen Krueger." *Krueger*, 882 N.E.2d at 734. Such is not the case here based on

the record before us. And again, importantly, IUHP has not demonstrated any harm related to a geographic violation of the restrictive covenant.

[29] The trial court addressed the public interest in the provision of those services in the particular area by reference to the geographic restrictions contained in the noncompetition clause. The court found "it is not uncommon for [Dr. Kesler's] patients to willingly travel to him for treatment." Appellant's App. Conf. Vol. II, p. 21. This highlights, however, that IUHP would "lose" those patients whether Dr. Kesler practiced 1 mile, 30.1 miles, or 100 miles away from downtown Indianapolis. It is Dr. Kesler's departure that is the source of IUHP's "loss." However, the court's findings do not show that it considered whether the public in the particular area would be disserved by the absence of Dr. Kesler's service. And IUHP has not shown that it has other physicians who provide the same services in the particular area.

[30] Almost one third of Dr. Kesler's patients, who are in poor health, would have to travel further to receive his unique medical services. Instead, the court found that IUHP's loss of the benefit of its bargain in terms of the noncompetition clause in the Employment Agreement, i.e., the suggested lost revenue in the amount of $2.8 million, outweighed the harm to Dr. Kesler by having to move his practice out of the geographically restricted area. Yet, IUHP was aware that upon Dr. Kesler's departure, which was allowed under the Employment Agreement, it would lose the continued revenue from his patients. Consequently, it has not shown any harm beyond that which it anticipated anyway under the terms of the Employment Agreement should Dr. Kesler

leave. IUHP has not tied its suggested revenue loss to a geographic violation of the restrictive noncompetition covenant.

[31] Although "Indiana courts recognize the freedom of parties to enter into contracts," *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995), "Indiana courts have long stated that covenants which restrict a person's employment opportunities are strongly disfavored," *see Buffkin*, 997 N.E.2d at 9-10, and "'an employer must show some reason why it would be unfair to allow the employee to compete with the former employer.'" *Clark's Sales and Serv., Inc. v. Smith*, 4 N.E.3d 772, 780 (Ind. Ct. App. 2014) (quoting *Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1109, 1110 (Ind. Ct. App. 2003)), *trans. denied*. Here, IUHP has failed to established a valid reason why it would be unfair for Dr. Kesler to practice at Community North Hospital.

[32] The question before us is limited to whether the issuance of the preliminary injunction was proper. Here, the trial court's findings do not show its consideration of the risk to the public within the geographic limitation brought about by the restriction of Dr. Kesler's services. And IUHP has not shown harm related to the geographic limitation of the noncompetition clause. As such, we order that the preliminary injunction be dissolved.

### D.3.b.    Irreparable Harm—Balance of Harms

[33] The trial court's Finding Number 6 says that the harm to IUHP outweighs the harm to Dr. Kesler. IUHP has advanced the proposition that the loss of the patients who would have stayed within the IU Health system for two years

would result in a $2.8 million loss due to Dr. Kesler's employment within the Community Health Network. However, it is not the violation of the geographic limitation of the noncompetition clause that they would suffer the suggested $2.8 million loss; it is Dr. Kesler's departure itself, which is authorized and was contemplated under the Employment Agreement. As such, IUHP has demonstrated no harm attributable to a violation of the noncompetition clause. And Dr. Kesler could, in theory, move his practice. Yet, the consideration missing from the trial court's consideration is the harm to the public if health care services are unavailable due to the grant of injunctive relief. For some of these very ill patients, the harm could be irreparable. We conclude that the trial court erred by granting the preliminary injunction and the same must be dissolved.

## Conclusion

[34] We conclude that the trial court's findings do not show a consideration of the disservice to the public by enjoining Dr. Kesler's medical practice. IUHP has failed to show it has suffered harm. Dr. Kesler could move his practice. But the record shows the public suffers from the injunctive relief granted here. Consequently, we conclude that the trial court erred by concluding that IUHP was entitled to injunctive relief and by issuing the preliminary injunction. Therefore, we reverse and remand this matter to the trial court with instructions to dissolve the preliminary injunction.

[35] Reversed and remanded.

Pyle, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Robert E Saint
Russell T. Clarke, Jr.
Emswiller, Williams, Noland, & Clarke, LLC
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Laurie E. Martin
Gregory A. English
Christopher D. Wagner
Hoover Hull Turner LLP
Indianapolis, Indiana